IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

JESSICA HAMILTON,                    )
                                     )
              Plaintiff,             )
                                     )
vs.                                  )        No. 06-3063
                                     )
NANCY OSCHWALD, in her individual    )
capacity, KELLIE HOLSOPPLE, in her   )
individual capacity, and DANA        )
RANSDELL, in her individual capacity,)
                                     )
              Defendants.            )


OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Defendants' motion for summary

judgment.

The motion is allowed.

I. INTRODUCTION

Plaintiff Jessica Hamilton was an employee of what was formerly

known as the Illinois Department of Public Aid and is presently known as

the Illinois Department of Healthcare and Family Services ("the

Department"). She brought this action against three former supervisors alleging that they took actions against her in violation of her rights under the First Amendment and the Illinois State Officials and Employees Ethics Act, 5 ILCS 430/5-15 *et seq*. The former supervisors are Defendants Kellie Holsopple, Nancy Oschwald and Dana Ransdell. In 2003, the Plaintiff's direct supervisor was Ransdell who, in turn, reported to Holsopple until February 2006, when Holsopple was replaced by Oschwald.

The Plaintiff alleges that in late 2003 and early 2004, she spoke with officials from the Department regarding several instances of improper, unethical and possibly illegal conduct by the Defendants. According to the Plaintiff, the Defendants subsequently made several changes to the terms and conditions of her employment. These changes began in the spring of 2004 and continued through the summer of 2006. She claims there is a genuine issue of material fact regarding whether these changes were retaliatory. The Defendants contend they are entitled to summary judgment because there is no evidence that the complained-of-actions were motivated by any protected speech engaged in by the Plaintiff. Moreover,

the same actions would have been taken regardless of any speech.

## II. FACTUAL BACKGROUND

The Plaintiff was employed as a Family Support Specialist ("FSS") within the Division of Child Support Enforcement ("the Division") for the Department.  As an FSS, the Plaintiff was responsible for interviewing Department clients and assisting them in obtaining and enforcing paternity and support orders.  FSSs work with clients to gather the appropriate information for completion of documentation so that the Division's legal representatives can establish parentage and/or support orders on behalf of the clients, or use judicial enforcement methods for the collection of support.

In 2000 and 2001, the Division created a Worker Performance Report ("WPR") which tracked the activity of an individual FSS.  The WPRs evolved over time to include tracking more tasks and eventually became more reliable.  Prior to the evaluations covering late 2003 and 2004, Defendant Dana Ransdell evaluated FSSs based on self-reported production numbers.  During 2003-04, the Plaintiff was evaluated as having "not met"

3

two performance objectives: (1) coding appointment within five days; and (2) 45 legal action referrals ("LARs") per month.

The Defendants assert the Plaintiff admits that her evaluation was accurate with respect to failing to code appointment.  The Defendants further claim that Plaintiff averaged only 27.45 LARs per month.  In the Plaintiff's evaluation for late 2004 and 2005, the WPRs again indicated that Plaintiff had failed to meet her production objective.  She averaged only 29.77 LARs, even excluding June and July 2004, months in which she missed some work due to family issues.  The Plaintiff claims she was told by her supervisors that because of her extensive travel, WPRs would not be used in evaluating her performance as an FSS.

The Defendants further contend that in late 2004 and 2005, the Plaintiff failed to meet the objective of 140 "quantifiable events" per month, averaging only 136.44 in the period evaluated.  FSSs were told by the Defendants that increasing the court order ratios in their assigned counties was a priority that would be used in evaluating their job performance.  Court order ratios are considered by the federal government when

determining the amount of funding provided to the Department.

Although the Plaintiff was "headquartered" in the Department's Quincy office, in 2003 and 2004 she spent approximately three days per week working in Morgan County because of its high case load.  Since starting as an FSS, the Plaintiff tried unsuccessfully to get headquartered in Morgan County.  She made regular requests to Ransdell seeking permission to work more days per week in Morgan County because she would be able to complete more work if given extra time.  At that time, the Plaintiff was also responsible for Brown and Scott Counties.  In November 2004, after receiving input from Holsopple, Ransdell changed the Plaintiff's work schedule so that instead of spending three days per week in Morgan County, she would be allowed only two days per week working there.  From 2000 through part of 2005, the Plaintiff was allowed to earn overtime for work she performed in Morgan County.

The Plaintiff asserts that reducing the amount of time she could spend in Morgan County made it more difficult for her to perform her job duties because when working in the Quincy office, she did not have access to

5

certain records for Morgan County clients. Other FSSs agreed that it would be more difficult to perform their jobs if the amount of time they could work in their counties was reduced because they would not have access to necessary records and documents when working in their assigned headquarters. The Plaintiff alleges that it was difficult for her to complete the necessary interviews in Morgan County in the allotted time.

In December 2004, Ransdell and Holsopple decided that Plaintiff would no longer be responsible for Brown County, even though she had a high court order ratio there and it was near her home. The following month, Ransdell assigned Brown and Schuyler Counties to Velta Donaldson, even though Plaintiff had previously performed well when covering those counties. The Defendants dispute these allegations by asserting that in January 2005, the Brown County DHS office was closed. The Brown County clients were being served out of Schuyler County, which had been assigned to Donaldson prior to the closure.

On March 23, 2005, after consulting with Holsopple and Oschwald, Ransdell issued to the Plaintiff a written counseling for inappropriate

6

behavior and discourteous treatment after Plaintiff used the term "B.S." in an email to Oschwald.  A documented counseling may be used as a precursor to the imposition of more severe forms of progressive discipline, such that a supervisor may rely upon the fact that an employee may have previously been given a written counseling when deciding to suspend an employee.  The Plaintiff claims that other employees, including the Defendants, regularly used harsher language.

In the spring of 2005, Ransdell assigned Brown and Schuyler Counties to Dan Graham.  Ransdell also assigned Cass County to the Plaintiff.  Cass County, which includes Beardstown, Illinois, has a larger caseload than Schuyler County and has a large Spanish speaking population.  Accordingly, it was more difficult for a non-Spanish speaking FSS such as Plaintiff to work in Cass County.  At the time Ransdell assigned her to work in Cass County, the Plaintiff was also responsible for Morgan County which has a high caseload.  On March 6, 2006, Ransdell and Oschwald reassigned the Plaintiff's counties of Morgan, Scott and Cass to Terri Allen, the Adams County FSS, and assigned Adams County to Plaintiff, an assignment which

the Plaintiff alleges was retaliatory.

The parties dispute whether the Plaintiff was reprimanded by Oschwald and Ransdell on March 7, 2006 for discussing the reassignment of counties with a co-worker. The Plaintiff alleges that her 21-day suspension was, in part, the result of Plaintiff recording incorrect mileage information on her travel vouchers. She claims that the information was given to her by Ransdell and she had no reason to believe it was incorrect. The Defendants dispute this and contend that, although the Plaintiff traveled for the Department from 2000 through 2006, she admitted during the investigation that she had been claiming the same amount since she began working as an FSS. Ransdell, who never spoke out, was subjected to a 21-day suspension for a substantiated finding as to only the travel reimbursement charge, while the Plaintiff was found to not only have travel reimbursement violations, but other violations as well.

The Plaintiff alleges that prior to a November 2004 staff meeting, she advised Ransdell that she wanted to discuss Ransdell's and Holsopple's abuse of travel. The Plaintiff grieved her evaluation for the period of

December 2003 through November 2004, and sought to have it changed.
In preparation for her grievance defense, the Plaintiff reported to her union
representative that she thought her supervisors were engaging in
misconduct.  In March 2005, Terri Shawgo of the Department's Office of
Labor Relations learned that Plaintiff may have had information that her
supervisors were falsifying travel information and reported such to the
Office of Inspector General ("OIG").  The Defendants further allege that
when the OIG sought a statement from the Plaintiff regarding alleged
unnecessary travel by her supervisors, the Plaintiff brought information for
Investigator Loren Larsen of the Illinois Department of Public Aid about her
evaluation, work assignments, increased caseload and other grievances,
rather than discussing the alleged ethics violations.

In March 2005, Defendant Oschwald began seeking information from
the Plaintiff regarding cases that had not had the appointments coded on
the system and cases which had no activity for 45 days.  Oschwald sought
the same information from any FSS in the Springfield Region whose cases
did not have appointment coded or had no activity in 45 days.  She did not

seek this information from employees that coded all of their appointments within five days, or took action on all their cases within 45 days.

The Defendants claim that prior to instructing Dana Ransdell as to the new overtime procedures, Holsopple was unaware that Plaintiff was working overtime out of a field office. The Plaintiff disputes this allegation and says that Holsopple approved her overtime. According to the Plaintiff, moreover, Holsopple testified in her deposition that Plaintiff was allowed to continue working overtime in Morgan County, even though she was headquartered in the Department's Adams County office.

The Defendants contend that at no time from 2003 through 2006 did the OIG receive a report of alleged misconduct directly from the Plaintiff. The only report of allegations similar to those identified in the complaint was an anonymous phone call to the OIG on February 24, 2004. The Plaintiff testified she was not the anonymous caller. The Plaintiff disputes these allegations by noting that in January 2004, she discussed issues of malfeasance, gross mismanagement, waste of funds and abuse of authority with Investigator Larsen. She subsequently followed up and further states

10

that the fact that Plaintiff had reported Defendants' misconduct was regularly discussed by Plaintiff's co-workers.  The Defendants allege that Larsen testified the first time he ever heard Plaintiff's name was in March 2005, when he was directed to follow up to the report by Terri Shawgo.

The Defendants claim they first learned that Plaintiff had allegedly reported misconduct to the OIG by way of the complaint in this case, on or about March 24, 2006.  They further contend that Plaintiff made no allegation against Holsopple following that Defendant's transfer out of the Springfield Region in February 2006, over a month before she ever learned that Plaintiff is alleged to have engaged in protected speech.  The Plaintiff disputes these allegations and states that in March 2004, she informed Ransdell that she was the person who called OIG.  The Plaintiff further claims that Ransdell contacted Holsopple, who confronted the Plaintiff the next morning at the Department's Quincy office about calling OIG.

The Plaintiff contends it is undisputed that, beginning in the spring of 2004 and continuing through the summer of 2006, the Defendants made several changes to the terms and conditions of her employment.  She claims

11

there is a factual issue as to whether these changes were retaliatory and taken in response to her conversations with OIG.  The Defendants assert they are entitled to summary judgment because there is no evidence that the complained of actions were motivated by any speech and the actions would have been taken regardless of any speech.

For the reasons that follow, this case does not turn on the Plaintiff's speech or the legitimacy of the Defendants' actions.  The Defendants are entitled to summary judgment on the Plaintiff's First Amendment retaliation claims because of her status as a public employee.

### III. ANALYSIS

#### A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists.  Sartor v. Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004).  The Court construes all facts and makes all reasonable inferences in favor of the non-moving party.  Magin v. Monsanto Co., 420 F.3d 679, 686 (7th Cir. 2005).

B. First amendment retaliation

The Defendants allege they are entitled to summary judgment on the Plaintiff's First Amendment retaliation claims because Plaintiff did not engage in protected speech prior to speaking with the Office of Executive Inspector General ("OEIG") on May 6, 2005.  They claim that even if the Plaintiff's speech was protected, she cannot prove it was a substantial or motivating factor in the Defendants' actions.  The Defendants contend, moreover, that the actions of which the Plaintiff complains would have been

13

taken regardless of whether she had engaged in any speech.  Finally, the Defendants assert that Plaintiff cannot make out a First Amendment retaliation conspiracy claim.

The Court must first determine whether the Plaintiff's speech was made pursuant to her official duties.  A public employee does not lose all of her First Amendment rights because of her employment.  <u>See</u> <u>Morales v. Jones</u>, 494 F.3d 590, 595 (7th Cir. 2007).  "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."   <u>Id.</u> (citations omitted). Courts now must first determine whether the employee was speaking as a citizen; it is only then they examine the content of the speech.  <u>Spiegla v. Hull</u>, 481 F.3d 961, 965 (7th Cir. 2007) (citation omitted).

The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."   <u>Garcetti v. Ceballos</u>, 547 U.S. 410, __, 126 S. Ct. 1951, 1960 (2006).  The Supreme

14

Court further observed that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created."  <u>Id.</u>  The Seventh Circuit has stated that "[d]etermining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." <u>Vose v. Kliment</u>, 506 F.3d 565, 569 (7th Cir. 2007) (citing <u>Garcetti</u>, 547 U.S. at __, 126 S. Ct. at 1962-63).

In March 2004, Kellie Holsopple was interviewed by OIG regarding the amount of travel she was taking on Department time.  The Plaintiff contends that she is the only person in the Springfield Region who claims to have contacted OIG in 2004 or who has been identified as the potential source of the OIG complaint.  Thus, the Plaintiff asserts there is a reasonable inference that it was she who reported Holsopple's misconduct to the OIG in early 2004.  But even if there is a connection between the Plaintiff's speech and the alleged retaliation, it will only matter for First

Amendment purposes if she was speaking as a private citizen.

The Plaintiff also claims to have provided information to OIG which suggested that Ransdell and Holsopple were defrauding the taxpayers of the State of Illinois by claiming reimbursement for travel that served no legitimate purpose and was undertaken for the sole purpose of allowing those Defendants to offset the monetary loss incurred when the State stopped making their 4% pension contributions. They also defrauded the State's taxpayers by holding a social gathering to commemorate Ransdell's cosmetic surgery during work hours at which no official Department work was performed. The Plaintiff notes that her official duties involved obtaining child support orders, enforcing court orders and other high level tasks related to child support. Because those official duties did not include speaking with the OIG, the Plaintiff claims that in reporting the Defendants' misconduct, the Court should find that she was speaking as a citizen and not an employee.

In their reply brief, the Defendants note that on July 15, 2002, the Plaintiff received the Department's Employee Handbook and agreed that as

16

a condition of her employment to abide by the policies contained therein. The Employee Handbook contains the following requirements: (1) "All employees of the department are required to report any suspected fraud or misconduct;" (2) "You must immediately report all instances of alleged or suspected employee misconduct to the Office of Inspector General's Bureau of Internal Affairs (OIG's BIA);" and (3) "All department staff are required to cooperate with any internal investigation." These requirements applied prior to any alleged speech by the Plaintiff. The Defendants contend that because the Plaintiff was required as a condition of her employment to report allegations of misconduct by other employees and to cooperate with internal investigations, she cannot maintain a First Amendment claim against the Defendants based on her speaking with the Department's OIG, regardless of when it occurred.

The Plaintiff notes that in <u>Spiegla</u>, the Seventh Circuit addressed whether a correctional officer's reporting of a possible security breach to a supervisor was "protected speech" in light of the Supreme Court's holding in <u>Garcetti</u>. 481 F.3d at 965-66. The court in <u>Spiegla</u> cited a Ninth Circuit

17

case, <u>Freitag v. Ayers</u>, 468 F.3d 528 (9th Cir. 2006), which  the Plaintiff

claims supports her argument.  In <u>Freitag</u>, 468 F.3d at 544-45, the court

addressed whether a correctional officer's communications with a state

senator and the inspector general regarding sexual harassment complaints

constituted protected speech.  The Ninth Circuit determined the speech was

protected by the First Amendment because it was not part of a correctional

officer's official tasks to complain to a state senator or OIG about the state's

failure to eliminate harassment in the workplace.  <u>Id.</u> at 545.  However, the

court also concluded that any internal reports of sexual misconduct and the

prison's failure to respond were not constitutionally protected under

<u>Garcetti</u> because those were submitted pursuant to the official duties of a

correctional officer and thus not in her capacity as a citizen.  <u>Id.</u> at 546.

In <u>Spiegla</u>, the plaintiff was a correctional officer who reported a

possible security breach to an assistant superintendent at the facility where

she was employed.  481 F.3d at 962.  Because this was consistent with the

officer's duty to keep the prison secure, it was part of her official

responsibility and the speech was thus not "citizen" speech protected by the

First Amendment.  Id. at 966.  The Seventh Circuit explained:

> Spiegla "acted as a government employee" when she reported
> the possible misconduct to her superior and sought clarification
> of a security policy she felt may have been breached.  She did
> not make a public statement, discuss politics with a coworker,
> write a letter to newspapers or legislators, or otherwise speak as
> a citizen. . . .  Because Spiegla did not speak as a citizen under
> the standard articulated in Garcetti, she has no claim for First
> Amendment retaliation under § 1983.

Id. at 967 (internal citations omitted).  The Plaintiff's reliance on Spiegla

and Freitag is misplaced.  Those cases would support the Plaintiff's

argument if her speech, for example, involved a complaint to a politician or

a letter to a newspaper.  Because the Plaintiff had a responsibility to report

wrongdoing, Spiegla actually hurts her argument.  Like Spiegla, the Plaintiff

in this case "acted as a government employee" in reporting possible

misconduct.  Of course, reporting a possible security breach is obviously

more central to the official duties of a correctional officer but there is no

reason that should have any relevance to the First Amendment analysis.

The Employee Handbook states that the Plaintiff had a duty to report

fraud and misconduct.  This was not part of her specific job description, but

a general obligation of each of the Department's employees.  The Supreme

19

Court recognized there would be instances where it was difficult to determine whether an employee was speaking in an official capacity or as a citizen.   In <u>Garcetti</u>, the Supreme Court mentioned, but rejected, "the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions."   547 U.S. at __, 126 S. Ct. at 1961. "[T]he listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."   <u>Id.</u> at __, 126 S. Ct. at 1962.   The Seventh Circuit reiterated that an inquiry into an employee's formal job description is not enough, stating that "[a] public employee's more general responsibilities are not beyond the scope of official duties for First Amendment purposes."   <u>Vose</u>, 506 F.3d at 571 (citations omitted).   The speech in this case, while not part of an official job description, was at the very least part of the Plaintiff's general responsibilities.   There simply is no basis for finding that the Constitution provides the Plaintiff with a cause of action when it does not do so for others who are simply doing their job.   <u>See</u>, <u>e.g.</u>, <u>Vose</u>, 506 F.3d

at 572 ("While Vose may have gone beyond his ordinary *daily* job duties in reporting the suspected misconduct outside his unit, it was not beyond his official duty as a sergeant of the narcotics unit to ensure the security and propriety of the narcotics unit's operations.") (emphasis in original).

Thus, the Court is unable to conclude that Plaintiff was speaking as a citizen when she reported the Defendants' misconduct to OIG.  The Supreme Court observed in <u>Garcetti</u> that, while exposing governmental misconduct is important and should be welcomed by public employers, there already are certain remedies–such as whistle-blower protection laws–which protect those who seek to expose wrongdoing.  547 U.S. at __, 126 S. Ct. at 1962.  "These imperatives, as well as obligations arising from any other applicable constitutional provisions and mandates of the criminal and civil laws, protect employees and provide checks on supervisors who would order unlawful or otherwise inappropriate actions."  <u>Id.</u>  The Supreme Court concluded by stating:

> We reject, however, the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties.  Our precedents do not support the existence of a constitutional cause of action behind every

21

statement a public employee makes in the course of doing his or
her job.

<u>Id.</u>   Based on the policies contained in the Department's Employee
Handbook, the Court must conclude that the speech at issue in this case
was made pursuant to the Plaintiff's professional duties.   Because the
Constitution does not protect public employees from discipline in such
circumstances, the Defendants are entitled to summary judgment on counts
one and two.[1]

## IV. CONCLUSION

The Defendants' motion for summary judgment will be granted as to
the Plaintiff's First Amendment claims.   In count three, the Plaintiff
asserted a supplemental state law claim for violations of Article 15 of the
Illinois State Officials and Employees Ethics Act, 5 ILCS 430/15-5 *et seq*.
Having concluded that summary judgment is warranted on counts one and
two, the Court declines to exercise supplemental jurisdiction over the state

---

[1]In Count one, the Plaintiff asserted claims pursuant to 42 U.S.C. § 1983 for
retaliation under the First Amendment.  Count two adds a section 1983 claim that
the Defendants unlawfully conspired against Plaintiff for exercising her rights under
the First Amendment.

law claims.  See 28 U.S.C. § 1367(c)(3).

Ergo, the Defendants' motion for summary judgment [d/e 43] is ALLOWED.  Counts One and Two are dismissed with prejudice.  Count Three is dismissed without prejudice.  The Clerk will enter judgment in favor of the Defendants.

ENTER: March 11, 2008

FOR THE COURT:

s/Richard Mills
United States District Judge

23